FILED
2017 May-31  PM 02:32
U.S. DISTRICT COURT
N.D. OF ALABAMA



## Certified Policy Record

I, the undersigned, do hereby confirm that I am custodian of the records pertaining to the issuance of policies by State Farm Mutual Automobile Insurance Company.

I certify that the attached documents represent a true and accurate record of the terms and conditions of Policy Number 272 1462-E20-01 including any endorsements, if applicable, for the policy term(s) November 20, 2016 to May 20, 2017 and insuring Dana & Jimmy R Bailey based on available records.

The following endorsements are included:
6128AY AMENDATORY ENDORSEMENT - EFFECTIVE DATE 11-20-15.

It is State Farm's business practice to print a new Declarations Page only when a policy issuance transaction such as a change of coverage occurs. Therefore, the included Declarations Page which was in effect at the time of loss will indicate the policy period of the last policy issuance transaction.

The policy was in effect on the loss date of January 14, 2017.

Beth Goff
Underwriter
Date: 5/16/17

State of Georgia
County of Fulton

Subscribed and sworn to before me this _16th_ day of _May_, 20_17_.

OLIVIA JONES
NOTARY PUBLIC
Gwinnett County
State of Georgia
My Commission Expires June 22, 2019

Notary Public

My Commission Expires: _____

1004516

2000  143551  200  03-21-2012

EXHIBIT C

**State Farm Mutual Automobile Insurance Company**
11350 Johns Creek Parkway
Duluth GA 30098



**DECLARATIONS PAGE**

NAMED INSURED

AT2                    01-2335-4  A       A

001568   0058
BAILEY, DANA & JIMMY R

MOUNT OLIVE AL   35117-3638

| POLICY NUMBER | 272 1462-E20-01 |
|---|---|
| POLICY PERIOD MAY 20 2015 to NOV 20 2015 | |
| 12:01 A.M. Standard Time | |

STATE FARM PAYMENT PLAN NUMBER

AGENT

SCOTT CANTRELL
313 FIELDSTOWN RD STE 101
GARDENDALE, AL 35071-2796

PHONE:(205)631-6201

**DO NOT PAY PREMIUMS SHOWN ON THIS PAGE.**
**IF AN AMOUNT IS DUE, THEN A SEPARATE STATEMENT IS ENCLOSED.**

### YOUR CAR

| YEAR | MAKE | MODEL | BODY STYLE | VEHICLE ID. NUMBER | CLASS |
|---|---|---|---|---|---|
| 2004 | TOYOTA | PRERUNNER | PICKUP | ▉738 | ▉000 |

| SYMBOLS | COVERAGE & LIMITS | PREMIUMS |
|---|---|---|
| A | Liability Coverage | $191.68 |
|   | Bodily Injury Limits | |
|   | Each Person,  Each Accident | |
|   | $50,000      $100,000 | |
|   | Property Damage Limit | |
|   | Each Accident | |
|   | $50,000 | |
| C | Medical Payments Coverage | $28.25 |
|   | Limit  Each Person | |
|   | $5,000 | |
| D | Comprehensive Coverage - $1,000 Deductible | $23.48 |
| G | Collision Coverage - $1,000 Deductible | $101.58 |
| H | Emergency Road Service Coverage | $3.60 |
| R1 | Car Rental and Travel Expenses Coverage | $13.65 |
|   | Limit  Car Rental Expense | |
|   | Each Day,    Each Loss | |
|   | 80%          $1,000 | |
| U | Uninsured Motor Vehicle Coverage | $27.60 |
|   | Bodily Injury Limits | |
|   | Each Person,  Each Accident | |
|   | $25,000      $50,000 | |

| **Total premium for MAY 20 2015 to NOV 20 2015.** | **$389.84** | This is not a bill. |
|---|---|---|

### IMPORTANT MESSAGES

New Policy Form

State Farm works hard to offer you the best combination of price, service, and protection. The amount you pay for automobile insurance is determined by many factors such as the coverages you have, where you live, the kind of car you drive, how your car is used, who drives the car, and information from consumer reports.

### EXCEPTIONS, POLICY BOOKLET & ENDORSEMENTS (See policy booklet & individual endorsements for coverage details.)

YOUR POLICY CONSISTS OF THIS DECLARATIONS PAGE, THE POLICY BOOKLET -
FORM 9801A, AND ANY ENDORSEMENTS THAT APPLY, INCLUDING THOSE ISSUED TO YOU
WITH ANY SUBSEQUENT RENEWAL NOTICE.
6901A.1   AMENDATORY ENDORSEMENT.

| Agent: | SCOTT CANTRELL |
|---|---|
| Telephone: | (205)631-6201 |
| Prepared | JUN 08 2015 |   2335-B6A |

01765/01514          See Reverse Side
155-3866.2 04-2005 (o1a025hd)
I4SX0N  (o1a025te)            (o1a0254c)

This policy is issued by State Farm Mutual Automobile Insurance Company.

### MUTUAL CONDITIONS

1. **Membership.** While this policy is in force, the first insured shown on the Declarations Page is entitled to vote at all meetings of members and to receive dividends the Board of Directors in its discretion may declare in accordance with reasonable classifications and groupings of policyholders established by such Board.

2. **No Contingent Liability.** This policy is non-assessable.

3. **Annual Meeting.** The annual meeting of the members of the company shall be held at its home office at Bloomington, Illinois, on the second Monday of June at the hour of 10:00 A.M., unless the Board of Directors shall elect to change the time and place of such meeting, in which case, but not otherwise, due notice shall be mailed each member at the address disclosed in this policy at least 10 days prior thereto.

In Witness Whereof, the State Farm Mutual Automobile Insurance Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

Secretary                    President

**6128AY AMENDATORY ENDORSEMENT**

This endorsement is a part of the policy.  Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

1.  **DEFINITIONS**

    *Newly Acquired Car* is changed to read:

    *Newly Acquired Car* means a *car* newly *owned by you* or a *resident relative*.

    A *car* ceases to be a *newly acquired car* on the earlier of:

    1.  the effective date and time of a policy, including any binder, issued by *us* or any other company that describes the *car* as an insured vehicle; or

    2.  the end of the 14th calendar day immediately following the date the *car* is delivered to *you* or a *resident relative*.

    If a *newly acquired car* is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car*, subject to a deductible of $500.

2.  **LIABILITY COVERAGE**

    a.  **Additional Definitions**

        Item 4. of *Insured* is changed to read:

        *Insured* means any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is:

    a.  neither *owned by*, nor hired by, that other *person* or organization; and

    b.  neither available for, nor being used for, carrying *persons* for a charge.

    b.  **Exclusions**

        Exclusion 7. is changed to read:

        THERE IS NO COVERAGE FOR AN *INSURED* FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS:

        a.  MADE AVAILABLE; OR

        b.  BEING USED

        TO CARRY *PERSONS* FOR A CHARGE.  This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

3.  **MEDICAL PAYMENT COVERAGE**

    **Exclusions**

    Exclusion 4. is changed to read:

    THERE IS NO COVERAGE FOR AN *INSURED* WHO IS *OCCUPYING* A VEHICLE WHILE IT IS:

    a.  MADE AVAILABLE; OR

    b.  BEING USED

    TO CARRY *PERSONS* FOR A CHARGE.  This exclusion does not apply to:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

a. the use of a *private passenger car* on a share-the-expense basis; or

b. an *insured* while *occupying* a *non-owned car* as a *passenger*;

4. **PHYSICAL DAMAGE COVERAGES**

a. The paragraph that reads:

If a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

is changed to read:

**Deductible**

1. If "D" is shown under "SYMBOLS" on the Declarations Page, then the deductible that applies to Comprehensive Coverage, if any, is the dollar amount shown on the Declarations Page next to the title of this coverage. However, *we* will not deduct more than $500 for any *loss* to a *newly acquired car*.

2. If "G" is shown under "SYMBOLS" on the Declarations Page, then the deductible that applies to Collision Coverage is the dollar amount shown on the Declarations Page next to the title of this coverage. However, *we* will not deduct more than $500 for any *loss caused by collision* to a *newly acquired car*.

b. **Insuring Agreements**

**Car Rental and Travel Expenses Coverage**

Item 4.a. **Car Rental Expenses** is changed to read:

**Car Rental Expense**

*We* will pay the *daily rental charge* incurred when an *insured* rents a *car* from a *car business* while *your car* or a *newly acquired car* is:

(1) not drivable; or

(2) being repaired

as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage.

*We* will pay this *daily rental charge* incurred during a period that:

(1) starts on the date:

(a) the vehicle is not drivable as a result of the *loss*; or

(b) the vehicle is left at a repair facility if the vehicle is drivable; and

(2) ends on the earliest of:

(a) the date the vehicle has been repaired or replaced;

(b) the date *we* offer to pay for the *loss* if the vehicle is repairable but *you* choose to delay repairs; or

(c) seven days after *we* offer to pay for the *loss* if the vehicle is:

(i) a total loss as determined by *us*; or

(ii) stolen and not recovered.

The amount of any such *daily rental charge* incurred by an *insured* must be reported to *us* before *we* will pay such amount.

6128AY
©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

c. **Exclusions**

Exclusion 3. is changed to read:

THERE IS NO COVERAGE FOR ANY ***COVERED VEHICLE*** WHILE IT IS:

a.   MADE AVAILABLE; OR

b.   BEING USED

TO CARRY ***PERSONS*** FOR A CHARGE.  This exclusion does not apply to the use of a ***private passenger car*** on a share-the-expense basis;

5.   **INSURED'S DUTIES**

a.   Item 6.a.(3) is changed to read:

A ***person*** making claim under:

a.   Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Death, Dismemberment and Loss of Sight Coverage, or Loss of Earnings Coverage must:

(3) provide written authorization for ***us*** to obtain medical bills, medical records, wage information, salary information, employment information, and any other information ***we*** deem necessary to substantiate the claim.

Such authorizations must not:

(a) restrict ***us*** from performing ***our*** business functions in:

(i)  obtaining records, bills, information, and data; nor

(ii) using or retaining records, bills, information, and data collected or received by ***us***;

(b) require ***us*** to violate federal or state laws or regulations;

(c) prevent ***us*** from fulfilling ***our*** data reporting and data retention obligations to insurance regulators; or

(d) prevent ***us*** from disclosing claim information and data:

(i)  to enable performance of ***our*** business functions;

(ii) to meet ***our*** reporting obligations to insurance regulators;

(iii) to meet ***our*** reporting obligations to insurance data consolidators; and

(iv) as otherwise permitted by law.

If an injured ***insured*** is a minor, unable to act, or dead, then his or her legal representative must provide ***us*** with the written authorization.

If the holder of the information refuses to provide it to ***us*** despite the authorization, then at ***our*** request the ***person*** making claim or

6128AY
©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

his or her legal representative must obtain the information and promptly provide it to *us*;

b.  The following is added to item 6.:

A *person* making claim under Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Death, Dismemberment and Loss of Sight Coverage, or Loss of Earnings Coverage must submit to *us* all information *we* need to comply with federal and state laws and regulations.

6.  **GENERAL TERMS**

a.  The following is added to **Newly Owned or Newly Leased Car**:

If a *resident relative* wants to insure a *car* newly *owned by* the *resident relative* with the *State Farm Companies* after that *car* ceases to be a *newly acquired car*, then the *resident relative* must apply to the *State Farm Companies* for a separate policy to insure the *car* newly *owned by* the *resident relative*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

b.  The following are added to **GENERAL TERMS**:

**Electronic Delivery**

With *your* consent, *we* may electronically deliver any document or notice, including a notice to renew, nonrenew, or cancel, instead of mailing it or delivering it by other means. Proof of transmission will be sufficient proof of notice.

**Our Rights Regarding Claim Information**

a.  *We* will collect, receive, obtain, use, and retain all the items described in item b.(1) below and use and retain the information described in item b.(3)(b) below, in accordance with applicable federal and state laws and regulations and consistent with the performance of *our* business functions.

b.  Subject to a. above, *we* will not be restricted in or prohibited from:

(1)  collecting, receiving, or obtaining records, receipts, invoices, medical bills, medical records, wage information, salary information, employment information, data, and any other information;

(2)  using any of the items described in item b.(1) above; or

(3)  retaining:

(a)  any of the items in item b.(1) above; or

(b)  any other information *we* have in *our* possession as a result of *our* processing, handling, or otherwise resolving claims submitted under this policy.

c.  *We* may disclose any of the items in item b.(1) above and any of the information described in item b.(3)(b) above:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015
6128AY

(1) to enable performance of *our* business functions;

(2) to meet *our* reporting obligations to insurance regulators;

(3) to meet *our* reporting obligations to insurance data consolidators;

(4) to meet other obligations required by law; and

(5) as otherwise permitted by law.

d. *Our* rights under a., b., and c. above shall not be impaired by any:

(1) authorization related to any claim submitted under this policy; or

(2) act or omission of an *insured* or a legal representative acting on an *insured's* behalf.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

## 6901A.1 AMENDATORY ENDORSEMENT

This endorsement is a part of the policy.  Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

1.  The following is added to exclusion 15.b. of **Liability Coverage**, exclusion 14.b. of **Medical Payments Coverage**, exclusion 19.b. of **Physical Damage Coverages**, and exclusion 2.d.(2) of **Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage**:

> This exclusion does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving, or any type of competitive driving.

2.  **THIS POLICY**

The following is added:

> 5.  *Your* purchase of this policy may allow:
>
> > a.  *you* to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the *State Farm Companies*, subject to their applicable eligibility rules; or
> >
> > b.  the premium or price for other products or services purchased by *you*, including non-insurance products or services, to vary. Such other products or services must be provided by the *State Farm Companies* or by an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product

or service offered or provided by that organization.

3.  **DEFINITIONS**

*State Farm Companies* is changed to read:

> *State Farm Companies* means one or more of the following:
>
> 1.  State Farm Mutual Automobile Insurance Company;
>
> 2.  State Farm Fire and Casualty Company; and
>
> 3.  Subsidiaries or affiliates of either 1. or 2. above.

4.  **LIABILITY COVERAGE**

a.  **Insuring Agreement** and **Supplementary Payments** are replaced by the following:

> **Insuring Agreement**
>
> 1.  *We* will pay damages an *insured* becomes legally liable to pay because of:
>
> > a.  *bodily injury* to others; and
> >
> > b.  damage to property
> >
> > caused by an accident that involves a vehicle for which that *insured* is provided Liability Coverage by this policy.
>
> 2.  *We* have the right to:
>
> > a.  investigate, negotiate, and settle any claim or lawsuit;
> >
> > b.  defend an *insured* in any claim or lawsuit, with attorneys chosen by *us*; and

©, Copyright, State Farm Mutual Automobile Insurance Company, 2010

c.   appeal any award or legal decision

for damages payable under this policy's Liability Coverage.

**Supplementary Payments**

*We* will pay, in addition to the damages described in the **Insuring Agreement** of this policy's Liability Coverage, those items listed below that result from such accident:

1.   Attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for such damages. *We* have no duty to pay attorney fees incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Liability Coverage;

2.   Court costs awarded by the court against an *insured* and resulting from that part of the lawsuit:

    a.   that seeks damages payable under this policy's Liability Coverage; and

    b.   against which *we* defend an *insured* with attorneys chosen by *us*.

    *We* have no duty to pay court costs incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Liability Coverage;

3.   Interest the *insured* is legally liable to pay on damages payable under the **Insuring Agreement** of this policy's Liability Coverage:

    a.   before a judgment, but only the interest on the lesser of:

(1)   that part of the damages *we* pay; or

(2)   this policy's applicable Liability Coverage limit; and

b.   after a judgment.

*We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage. *We* also have no duty to pay interest that accrues on any damages paid or payable by a party other than the *insured* or *us*;

4.   Premiums for bonds, provided by a company chosen by *us*, required to appeal a decision in a lawsuit against an *insured*. *We* have no duty to:

    a.   pay for any bond with a face amount that exceeds this policy's applicable Liability Coverage limit;

    b.   furnish or apply for any bonds; or

    c.   pay premiums for bonds purchased after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage; and

5.   The following costs and expenses if related to and incurred after a lawsuit has been filed against an *insured*:

    a.   Loss of wages or salary, but not other income, up to $200 for each day an *insured* attends, at *our* request:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2010

6901A.1

(1) an arbitration;

(2) a mediation; or

(3) a trial of a lawsuit; and

b. Reasonable expenses incurred by an *insured* at *our* request other than loss of wages, salary, or other income.

The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to *us* before *we* will pay such incurred costs or expenses.

b. **Exclusions**

1. The exception to exclusion 8. is changed to read:

   This exclusion does not apply to:

   a. *you*;

   b. any *resident relative*; or

   c. any agent, employee, or business partner of a. or b. above

   while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

2. The exception to exclusion 11. is changed to read:

   This exclusion does not apply to damage to a:

   a. motor vehicle *owned by* the employer of *you* or any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;

   b. residence while rented to or leased to an *insured*; or

c. private garage while rented to or leased to an *insured*;

5. **MEDICAL PAYMENTS COVERAGE**

   **Exclusions**

   The exception to exclusion 5. is changed to read:

   This exclusion does not apply to:

   a. *you*;

   b. any *resident relative*; or

   c. any agent, employee, or business partner of a. or b. above

   while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

6. **GENERAL TERMS**

   a. The following is added to 2. **Where Coverage Applies**:

      Death, Dismemberment and Loss of Sight Coverage, and Loss of Earnings Coverage apply anywhere in the world.

   b. The following is added:

      **Limited Coverage in Mexico**

      This policy does not provide Mexican auto insurance and does not comply with Mexican auto insurance requirements. If *you* or any other *insured* plan to drive in Mexico, then auto insurance providing coverage in Mexico should be purchased from a Mexican insurance company.

      Subject to the above paragraph, the following coverages apply in Mexico, but only for accidents and *losses* that occur in Mexico within 50 miles of the United States of America border and only for *insureds* as defined under each of the following coverages:

Page 3 of 5                                6901A.1

©, Copyright, State Farm Mutual Automobile Insurance Company, 2010

a.  **Liability Coverage**

For claims brought against an **insured** in Mexico, the **Supplementary Payments** provision of this policy's Liability Coverage is changed to read:

**We** may, in addition to the damages described in item 1. of the **Insuring Agreement** of this policy's Liability Coverage, pay or reimburse, at our option, reasonable attorney fees for an attorney licensed in Mexico to appear for and provide advice to **insureds** as defined under this policy's Liability Coverage. The amount of such attorney fees incurred by an **insured** must be reported to **us** before **we** will make payment.

b.  **Medical Payments Coverage**

c.  **Physical Damage Coverages**

Any amount payable for the repair or replacement of the **covered vehicle** under the **Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage** provision of this policy will be limited to the cost to repair or replace the **covered vehicle** in the United States of America.

**WE** HAVE NO DUTY TO PROVIDE A DEFENSE FOR **YOU** OR ANY OTHER **INSURED** IN ANY CRIMINAL, CIVIL, OR OTHER ACTION.

**WE** HAVE NO DUTY TO PAY ANY CLAIM OR COST THAT WOULD NOT BE PAYABLE UNDER THIS POLICY IF THE ACCIDENT OR **LOSS** HAD OCCURRED IN THE STATE OF ALABAMA IN THE UNITED STATES OF AMERICA.

All other policy provisions not in conflict with the provisions in this **Limited Coverage in Mexico** provision of this policy apply.

**If Other Coverage Applies**

Any coverage provided by this **Limited Coverage in Mexico** provision is excess over any other applicable insurance.

**Legal Action Against Us**

Any legal action against **us** arising out of an accident or **loss** occurring in Mexico must be brought in a court that has jurisdiction in the state of Alabama in the United States of America.

c.  The following is added to 4. **Changes to This Policy**:

d.  **Change of Policy Address**

**We** may change the named insured's policy address as shown on the Declarations Page and in **our** records to the most recent address provided to **us** by:

1.  **you**; or

2.  the United States Postal Service.

d.  Paragraph c. of 5. **Premium** is changed to read:

c.  The premium for this policy may vary based upon:

(1) the purchase of other products or services from the **State Farm Companies**;

(2) the purchase of products or services from an organization that has entered into an agreement or contract with the **State Farm Companies**.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2010
6901A.1

The ***State Farm Companies*** do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization; or

(3) an agreement, concerning the insurance provided by this policy, that the ***State Farm Companies*** has with an organization of which ***you*** are a member, employee, subscriber, licensee, or franchisee.

e.   7. **Nonrenewal** is changed to read:

7.   **Nonrenewal**

If ***we*** decide not to renew this policy, then, at least 30 days before the end of the current policy period, ***we*** will mail or deliver a nonrenewal notice to the most recent policy address that ***we*** have on record for the named insured who is shown on the Declarations Page.

f.   The first paragraph of b. **How and When We May Cancel** of 8. **Cancellation** is changed to read:

***We*** may cancel this policy by mailing or delivering a written notice to the most recent policy address that ***we*** have on record for the named insured who is shown on the Declarations Page.  The notice will provide the date cancellation is effective.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2010
6901A.1



Please read the policy carefully. If there is an accident, contact your State Farm agent or one of our Claim Offices at once. (See "INSURED'S DUTIES" in this policy booklet.)

State Farm®
**Car Policy**
Booklet

Alabama
Policy Form 9801A

## CONTENTS

THIS POLICY ............................................................. 3
DEFINITIONS .......................................................... 3
LIABILITY COVERAGE ........................................ 5
  Additional Definitions ........................................ 5
  Insuring Agreement ............................................ 5
  Supplementary Payments .................................. 5
  Limits ................................................................... 6
  Nonapplication .................................................... 6
  Exclusions ........................................................... 6
  If Other Liability Coverage Applies ................... 7
  Required Out-of-State Liability Coverage ......... 8
  Financial Responsibility Certification ............... 8
MEDICAL PAYMENTS COVERAGE .................... 9
  Additional Definitions ........................................ 9
  Insuring Agreement ............................................ 9
  Determining Medical Expenses .......................... 9
  Limit .................................................................. 10
  Nonapplication .................................................. 10
  Exclusions ......................................................... 10
  If Other Medical Payments Coverage or
    Similar Vehicle Insurance Applies ................. 11
  Our Payment Options ....................................... 12
UNINSURED MOTOR VEHICLE
  COVERAGE ...................................................... 12
  Additional Definitions ...................................... 12
  Insuring Agreement .......................................... 12
  Consent to Settlement ...................................... 13
  Deciding Fault and Amount ............................. 13
  Limits ................................................................ 13
  Nonapplication .................................................. 13
  Exclusions ......................................................... 14
  If Other Uninsured Motor Vehicle Coverage
    Applies ............................................................ 14
  Our Payment Options ....................................... 14
PHYSICAL DAMAGE COVERAGES .................. 14
  Additional Definitions ...................................... 15
  Insuring Agreements ......................................... 15
  Supplementary Payments – Comprehensive
    Coverage and Collision Coverage .................. 17
  Limits and Loss Settlement – Comprehensive
    Coverage and Collision Coverage .................. 17
  Limits – Car Rental and Travel Expenses
    Coverage ......................................................... 18
  Nonapplication .................................................. 18
  Exclusions ......................................................... 18
  If Other Physical Damage Coverage or Similar
    Coverage Applies ........................................... 19
  Financed Vehicle .............................................. 20
  Our Payment Options ....................................... 20

DEATH, DISMEMBERMENT AND
  LOSS OF SIGHT COVERAGE .......................... 21
  Additional Definition ....................................... 21
  Insuring Agreement .......................................... 21
  Benefit ............................................................... 21
  Exclusions – Death, Dismemberment and
    Loss of Sight Coverage and Loss of Earnings
    Coverage ......................................................... 22
  Our Payment Options– Death, Dismemberment
    and Loss of Sight Coverage and Loss of
    Earnings Coverage ......................................... 22
LOSS OF EARNINGS COVERAGE .................... 21
  Additional Definitions ...................................... 21
  Insuring Agreement .......................................... 21
  Limit .................................................................. 22
  Exclusions– Death, Dismemberment and
    Loss of Sight Coverage and Loss of Earnings
    Coverage ......................................................... 22
  Our Payment Options – Death, Dismemberment
    and Loss of Sight Coverage and Loss of
    Earnings Coverage ......................................... 22
INSURED'S DUTIES ........................................... 23
  Notice to Us of an Accident or Loss ............... 23
  Notice to Us of a Claim or Lawsuit ................ 23
  Insured's Duty to Cooperate With Us .............. 23
  Questioning Under Oath ................................... 23
  Other Duties Under the Physical
    Damage Coverages ......................................... 23
  Other Duties Under Medical Payments
    Coverage, Uninsured Motor Vehicle
    Coverage, Death, Dismemberment and
    Loss of Sight Coverage, and Loss of
    Earnings Coverage ......................................... 23
GENERAL TERMS .............................................. 24
  When Coverage Applies ................................... 24
  Where Coverage Applies .................................. 24
  Newly Owned or Newly Leased Car ............... 24
  Changes to This Policy ..................................... 25
  Premium ............................................................ 25
  Renewal ............................................................ 25
  Nonrenewal ....................................................... 25
  Cancellation ...................................................... 26
  Assignment ....................................................... 26
  Bankruptcy or Insolvency of the Insured ........ 26
  Concealment or Fraud ...................................... 26
  Our Right to Recover Our Payments ............... 26
  Legal Action Against Us .................................. 27
  Choice of Law .................................................. 27
  Terms of Policy Conformed to Statute ............ 27
  Severability ....................................................... 27

2
9801A

## THIS POLICY

1. This policy consists of:
   a. the most recently issued Declarations Page;
   b. the policy booklet version shown on that Declarations Page; and
   c. any endorsements that apply, including those listed on that Declarations Page as well as those issued in connection with any subsequent renewal of this policy.

2. This policy contains all of the agreements between all named insureds and applicants and:
   a. **us**; and
   b. any of **our** agents.

3. **We** agree to provide insurance according to the terms of this policy:
   a. based on payment of premium for the coverages chosen; and
   b. unless otherwise stated in EXCEPTIONS, POLICY BOOKLET, AND ENDORSEMENTS on the Declarations Page, in reliance on the following statements:

(1) The named insured is the sole owner of **your car**.
(2) Neither **you** nor any member of **your** household has, within the past three years, had
   (a) vehicle insurance canceled or nonrenewed by an insurer; or
   (b) either:
      (i) a license to drive; or
      (ii) a vehicle registration
   suspended, revoked, or refused.
(3) **Your car** is used for pleasure and business.

4. All named insureds and applicants agree by acceptance of this policy that:
   a. the statements in 3.b. above are made by the named insured or applicant and are true; and
   b. **we** provide this insurance on the basis those statements are true.

## DEFINITIONS

**We** define certain words and phrases below for use throughout the policy. Each coverage includes additional definitions only for use with that coverage. These definitions apply to the singular, plural, and possessive forms of these words and phrases. Defined words and phrases are printed in boldface italics.

**Bodily Injury** means bodily injury to a **person** and sickness, disease, or death that results from it.

**Car** means a land motor vehicle with four or more wheels, designed for use primarily on public roads. It does not include:
1. Any vehicle while located for use as a dwelling or other premises; or
2. A track-tractor designed to pull any type of trailer.

**Car Business** means a business or job where the purpose is to sell, lease, rent, repair, service, modify, transport, store, or park land motor vehicles or any type of trailer.

**Fungi** means any type or form of fungus or fungi and includes:
1. Mold;
2. Mildew; and
3. Any of the following that are produced or released by fungi:
   a. Mycotoxins;
   b. Spores;
   c. Scents; or
   d. Byproducts.

**Newly Acquired Car** means a **car** newly **owned** by **you**. A **car** ceases to be a **newly acquired car** on the earlier of:
1. the effective date and time of a policy, including any binder, issued by **us** or any other company that describes the **car** as an insured vehicle; or
2. the end of the 14th calendar day immediately following the date the **car** is delivered to **you**.

If a **newly acquired car** is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that **newly acquired car**, subject to a

deductible of $500. Any coverage provided as a result of this paragraph will apply only until the end of the 5th calendar day immediately following the date the **newly acquired car** is delivered to **you**.

**Non-Owned Car** means a **car** that is in the lawful possession of **you** or any **resident relative** and that neither:
1. is **owned** by:
   a. **you**;
   b. any **resident relative**;
   c. any other **person** who lives primarily in **your** household; or
   d. an employer of any **person** described in a., b., or c. above; nor
2. has been operated by, rented by, or in the possession of:
   a. **you**; or
   b. any **resident relative**
during any part of each of the 31 or more consecutive days immediately prior to the date of the accident or **loss**.

**Occupying** means in, on, entering, or exiting.

**Our** means the Company issuing this policy as shown on the Declarations Page.

**Owned By** means:
1. owned by;
2. registered to; or
3. leased, if the lease is written for a period of 31 or more consecutive days, to.

**Pedestrian** means a **person** who is not **occupying**:
1. a motorized vehicle; or
2. a vehicle designed to be pulled by a motorized vehicle.

**Person** means a human being.

**Private Passenger Car** means:
1. a **car** of the private passenger type, other than a pickup truck, van, minivan, or sport utility vehicle, designed primarily to carry **persons** and their luggage; or
2. a pickup truck, van, minivan, or sport utility vehicle:
   a. that is not used for:
      (1) wholesale; or
      (2) retail
   pick up or delivery; and
   b. that has a Gross Vehicle Weight Rating of 10,000 pounds or less.

**Resident Relative** means a **person**, other than **you**, who lives primarily with the first **person** shown as a named insured on the Declarations Page and who is:
1. related to that named insured or his or her spouse by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her primary residence with that named insured; or
2. a ward or a foster child of that named insured, his or her spouse, or a **person** described in 1. above.

**State Farm Companies** means one or more of the following:
1. State Farm Mutual Automobile Insurance Company;
2. State Farm Fire and Casualty Company; and
3. Any of their affiliates.

**Temporary Substitute Car** means a **car** that is in the lawful possession of the **person** operating it and that:
1. replaces **your car** for a short time while **your car** is out of use due to its:
   a. breakdown;
   b. repair;
   c. servicing;
   d. damage; or
   e. theft; and
2. neither **you** nor the **person** operating it own or have registered.

If a **car** qualifies as both a **non-owned car** and a **temporary substitute car**, then it is considered a **temporary substitute car** only.

**Trailer** means:
1. only these trailers:
   a. designed to be pulled by a **private passenger car**;
   b. not designed to carry **persons**; and
   c. while not used as premises for office, store, or display purposes; or
2. a farm implement or farm wagon while being pulled on public roads by a **car**.

**Us** means the Company issuing this policy as shown on the Declarations Page.

**We** means the Company issuing this policy as shown on the Declarations Page.

**You** or **Your** means the named insured or named insureds shown on the Declarations Page. If a named insured shown on the Declarations Page is a **person**, then "**you**" or "**your**" includes the spouse of

the first *person* shown as a named insured if the spouse lives primarily with that named insured.

*Your Car* means the vehicle shown under YOUR CAR on the Declarations Page. *Your Car* does not include a vehicle that *you* no longer own or lease.

If a *car* is shown on the Declarations Page under YOUR CAR, and *you* ask *us* to replace it with a *car* newly *owned by you*, then the *car* being replaced

will continue to be considered *your car* until the earliest of:

1. the end of the 30th calendar day immediately following the date the *car* newly *owned by you* is delivered to *you*;
2. the date this policy is no longer in force; or
3. the date the *car* is no longer own or lease the *car* being replaced.

## LIABILITY COVERAGE

This policy provides Liability Coverage if "A" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

*Insured* means:

1. *you* and *resident relatives* for:
   a. the ownership, maintenance, or use of:
      (1) *your car*;
      (2) a *newly acquired car*; or
      (3) a *trailer*; and
   b. the maintenance or use of:
      (1) a *non-owned car*; or
      (2) a *temporary substitute car*;
2. the first *person* shown as a named insured on the Declarations Page and that named insured's spouse who lives primarily with that named insured for the maintenance or use of a *car* that is *owned by*, or furnished by an employer to, a *person* who lives primarily in *your* household, but only if such *car* is neither *owned by*, nor furnished by an employer to, the first *person* shown as a named insured on the Declarations Page or that *person's* spouse;
3. any other *person* for his or her use of:
   a. *your car*;
   b. a *newly acquired car*;
   c. a *temporary substitute car*; or
   d. a *trailer* while attached to a *car* described in a., b., or c. above.

Such vehicle must be used within the scope of *your* consent; and

4. any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is neither *owned by*, nor hired by, that other *person* or organization.

*Insured* does not include the United States of America or any of its agencies.

**Insuring Agreement**

1. *We* will pay:
   a. damages an *insured* becomes legally liable to pay because of:
      (1) *bodily injury* to others; and
      (2) damage to property

   caused by an accident that involves a vehicle for which that *insured* is provided Liability Coverage by this policy;
   b. attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for such damages; and
   c. court costs charged to an *insured* and resulting from that part of a lawsuit:
      (1) that seeks damages payable under this policy's Liability Coverage; and
      (2) against which *we* defend an *insured* with attorneys chosen by *us*.

   *We* have no duty to pay attorney fees and court costs incurred after a lawsuit has been filed against an *insured* or:
   a. the amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to *us* before *we* will pay such incurred costs or expenses.

**Supplementary Payments**

*We* will pay, in addition to the damages, fees, and costs described in the **Insuring Agreement** above, the interest, premiums, costs, and expenses listed below that result from such accident:

1. Interest on damages owed by the *insured* that accrues:
   a. before a judgment, where owed by law, but only on that part of the judgment *we* pay; and
   b. after a judgment. *We* will not pay interest on damages paid or payable by a party other than the *insured* or *us*.

   *We* have no duty to pay interest that accrues after *we* deposit in court, pay or offer to pay the amount due under this policy's Liability Coverage;

2. Premiums for bonds, provided by a company chosen by *us*, required to appeal a decision in a lawsuit against an *insured*. *We* have no duty to:
   a. pay for bonds that exceed this policy's applicable Liability Coverage limit;
   b. furnish or apply for any bonds; or
   c. pay premiums for bonds purchased after *we* deposit in court, pay, or offer to pay, the amount due under this policy's Liability Coverage; and
3. The following costs and expenses if related to an incurred after a lawsuit has been filed against an *insured*:
   a. Loss of wages or salary, but not other income, up to $200 for each day an *insured* attends, at *our* request:
      (1) an arbitration;
      (2) a mediation; or
      (3) a trial of a lawsuit; and
   b. Reasonable expenses incurred by an *insured* at *our* request other than loss of wages, salary, or other income.

   The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to *us* before *we* will pay such incurred costs or expenses.

**Limits**

The Liability Coverage limits for *bodily injury* are shown on the Declarations Page under "Liability Coverage – Bodily Injury Limits – Each Person, Each Accident."

The limit shown under "Each Person" is the most *we* will pay for all damages resulting from *bodily injury* to any one *person* injured in any one accident, including all damages sustained by other *persons* as a result of that *bodily injury*. The limit shown under "Each Accident" is the most *we* will pay, subject to the limit for "Each Person", for all damages resulting from *bodily injury* to two or more *persons* injured in the same accident.

The Liability Coverage limit for damage to property is shown on the Declarations Page under "Liability Coverage – Property Damage Limit – Each Accident". The limit shown under "Each Accident" is the most *we* will pay for all damages resulting from damage to property in any one accident.

These Liability Coverage limits are the most *we* will pay regardless of the number of:

1. *insureds*;
2. claims made;
3. vehicles insured; or
4. vehicles involved in the accident.

**Nonduplication**

*We* will not pay any damages or expenses under Liability Coverage:

1. that have already been paid as expenses under Medical Payments Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*;
2. that have already been paid under Uninsured Motor Vehicle Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*; or
3. that have already been paid under any of the Physical Damage Coverages of any policy issued by the *State Farm Companies*.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO INTENTIONALLY CAUSES *BODILY INJURY* OR DAMAGE TO PROPERTY;
2. FOR *BODILY INJURY* TO:
   a. *YOU*;
   b. *RESIDENT RELATIVES*; AND
   c. ANY OTHER *PERSON* WHO BOTH LIVES PRIMARILY WITH AN *IN-SURED* AND WHO:
      (1) IS RELATED TO THAT *INSURED* BY BLOOD, MARRIAGE, OR ADOPTION; OR
      (2) IS A WARD OR FOSTER CHILD OF THAT *INSURED*;
3. OR FOR THAT *INSURED'S* INSURER FOR ANY OBLIGATION UNDER ANY TYPE OF WORKERS' COMPENSATION, DISABILITY, OR SIMILAR LAW;
4. FOR *BODILY INJURY* TO THAT *INSURED'S* EMPLOYEE WHICH ARISES OUT OF THAT EMPLOYEE'S EMPLOYMENT. This exclusion does not apply to that *insured's* household employee who is neither covered, nor required to be covered, under workers' compensation insurance;

5. FOR **BODILY INJURY** TO THAT **INSURED'S** FELLOW EMPLOYEE WHILE THE FELLOW EMPLOYEE IS IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT. This exclusion does not apply to **you** and **resident relatives** who are legally liable for **bodily injury** to fellow employees;

6. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN **INSURED**;

7. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS BEING USED TO CARRY **PERSONS** FOR A CHARGE. This exclusion does not apply to the use of a **private passenger car** on a share-the-expense basis;

8. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT **INSURED'S** EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A **CAR BUSINESS**. This exclusion does not apply to:
   a. **you**; or
   b. any **resident relative**
   while maintaining or using **your car**, a **newly acquired car**, a **temporary substitute car** or, a **trailer**;

9. WHILE THAT **INSURED** IS VALET PARKING A VEHICLE;

10. WHILE MAINTAINING OR USING ANY VEHICLE OTHER THAN **YOUR CAR**, A **NEWLY ACQUIRED CAR**, A **TEMPORARY SUBSTITUTE CAR**, OR A **TRAILER** IN ANY BUSINESS OR OCCUPATION OTHER THAN A **CAR BUSINESS** OR VALET PARKING. This exclusion does not apply to the maintenance or use of a **private passenger car**;

11. FOR DAMAGE TO PROPERTY WHILE IT IS:
   a. **OWNED BY**;
   b. RENTED TO;
   c. USED BY;
   d. IN THE CARE OF; OR
   e. TRANSPORTED BY

   **YOU**, A **RESIDENT RELATIVE**, OR THE **PERSON** WHO IS LEGALLY LIABLE FOR THE DAMAGE. This exclusion does not apply to either damage to a residence while rented to or leased to an **insured** or damage to a private garage while rented to or leased to an **insured**;

12. FOR LIABILITY ASSUMED UNDER ANY CONTRACT OR AGREEMENT;

13. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION;

14. WHILE USING A **TRAILER** WITH A MOTOR VEHICLE IF THAT **INSURED** IS NOT PROVIDED LIABILITY COVERAGE BY THIS POLICY FOR THE USE OF THAT MOTOR VEHICLE;

15. FOR THE OWNERSHIP, MAINTENANCE, OR USE OF ANY VEHICLE WHILE IT IS:
   a. OFF PUBLIC ROADS AND BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR
   b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH SPEED DRIVING; OR

16. WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

**If Other Liability Coverage Applies**

1. If Liability Coverage provided by this policy and one or more other Car Policies issued to **you** or any **resident relative** by one or more of the **State Farm Companies** apply to the same accident, then:
   a. the Liability Coverage limits of such policies will not be added together to determine the most that may be paid; and
   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. **We** may choose one or more polices from which to make payment.

2. The Liability Coverage provided by this policy applies as primary coverage for the ownership, maintenance, or use of **your car** or a **trailer** attached to it.
   a. If:
      (1) this is the only Car Policy issued to **you** or any **resident relative** by the **State Farm Companies** that provides Liability Coverage which applies to the accident as primary coverage; and
      (2) liability coverage provided by one or more sources other than the **State Farm Companies** applies as primary coverage for the same accident,

      then **we** will pay the proportion of damages payable as primary that **our** applicable limit bears to the sum of **our** applicable limit and the limits of all other liability coverage that apply as primary coverage.
   b. If:
      (1) more than one Car Policy issued to **you** or any **resident relative** by the **State Farm Companies** that provides Liability Coverage which applies to the accident as primary coverage; and
      (2) liability coverage provided by one or more sources other than the **State Farm Companies** also applies as primary coverage for the same accident,

      then the **State Farm Companies** will pay the proportion of damages payable as primary that the maximum amount that may be paid by the **State Farm Companies** as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as primary coverage.

3. Except as provided in 2. above, the Liability Coverage provided by this policy applies as excess coverage.
   a. If:
      (1) this is the only Car Policy issued to **you** or any **resident relative** by the **State Farm Companies** that provides Liability Coverage which applies to the accident as excess coverage; and
      (2) liability coverage provided by one or more sources other than the **State Farm Companies** applies as excess coverage for the same accident,

      then **we** will pay the proportion of damages payable as excess that **our** applicable limit bears to the sum of **our** applicable limit and the limits of all other liability coverage that apply as excess coverage.
   b. If:
      (1) more than one Car Policy issued to **you** or any **resident relative** by the **State Farm Companies** provides Liability Coverage which applies to the accident as excess coverage; and
      (2) liability coverage provided by one or more sources other than the **State Farm Companies** also applies as excess coverage for the same accident,

      then the **State Farm Companies** will pay the proportion of damages payable as excess that the maximum amount that may be paid by the **State Farm Companies** as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as excess coverage.

**Required Out-of-State Liability Coverage**

If:

1. an **insured** is in another state of the United States of America, a territory or possession of the United States of America, the District of Columbia, or any province or territory of Canada, and as a nonresident becomes subject to its motor vehicle compulsory insurance law, financial responsibility law, or similar law; and

2. this policy does not provide at least the minimum liability coverage required by such law for such nonresident,

then this policy will be interpreted to provide the minimum liability coverage required by such law.

This provision does not apply to liability coverage required by law for motor carriers of passengers or motor carriers of property.

**Financial Responsibility Certification**

When this policy is certified under any law as proof of future financial responsibility, and while required during the policy period, this policy will comply with such law to the extent required.

## MEDICAL PAYMENTS COVERAGE

This policy provides Medical Payments Coverage if "C" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means:

1. *you* and *resident relatives*:
   a. while *occupying*:
      (1) *your car*;
      (2) a *newly acquired car*;
      (3) a *temporary substitute car*;
      (4) a *non-owned car*; or
      b. a *trailer* while attached to a *car* described in (1), (2), (3), or (4) above; or
   b. if struck as a *pedestrian* by a motor vehicle or any type of trailer; and
2. any other *person* while *occupying*:
   a. *your car*;
   b. a *newly acquired car*;
   c. a *temporary substitute car*; or
   d. a *trailer* while attached to a *car* described in a., b., or c. above.

   Such vehicle must be used within the scope of *your* consent.

*Medical Expenses* mean *reasonable expenses* for *medical services*.

*Medical Services* mean treatments, procedures, products, and other services that are:

1. necessary to achieve maximum medical improvement for the *bodily injury*;
2. rendered by a healthcare provider:
   a. who is licensed as a healthcare provider if a license is required by law; and
   b. within the legally authorized scope of that healthcare provider's practice;
3. commonly and customarily recognized throughout the medical profession and within the United States of America as appropriate for the treatment of the *bodily injury*;
4. primarily designed to serve a medical purpose;
5. not experimental; and
6. not for research purposes.

*Reasonable Expenses* mean the lowest one of the following charges:

1. The usual and customary fees charged by a majority of healthcare providers who provide similar *medical services* in the geographical area in which the charges were incurred;
2. The fee specified in any fee schedule:
   a. applicable to medical payments coverage, no-fault coverage, or personal injury protection coverage included in motor vehicle liability policies issued in the state where *medical services* are provided; and
   b. as prescribed or authorized by the law of the state where *medical services* are provided;
3. The fees agreed to by both the *insured's* healthcare provider and *us*; or
4. The fees agreed upon between the *insured's* healthcare provider and a third party when *we* have a contract with such third party.

**Insuring Agreement**

*We* will pay:

1. *medical expenses* incurred because of *bodily injury* that is sustained by an *insured* and caused by a motor vehicle accident. *We* will only pay such *medical expenses*:
   a. if any of the *medical services* are provided within one year immediately following the date of the accident; and
   b. for *medical services* provided within three years immediately following the date of the accident, and
2. funeral expenses incurred for an *insured* who dies within three years immediately following the date of a motor vehicle accident if the death is a direct result of *bodily injury* sustained in such accident.

**Determining Medical Expenses**

*We* have the right to:

1. obtain and use:
   a. utilization reviews;
   b. peer reviews; and
   c. medical bill reviews
   to determine if the incurred charges are *medical expenses*;
2. use a physical examination of the *insured* to determine if:
   a. the *bodily injury* was caused by a motor vehicle accident; and
   b. the expenses incurred are *medical expenses*; and

3. enter into a contract with a third party that has an agreement with the *insured's* healthcare provider to charge fees as determined by that agreement.

**Limit**

The Medical Payments Coverage limit is shown on the Declarations Page under "Medical Payments Coverage – Limit – Each Person". This limit is the most *we* will pay for the *medical expenses* and funeral expenses combined, incurred by or on behalf of any one *insured* as a result of any one accident, regardless of the number of:

1. *insureds*;
2. claims made;
3. vehicles insured; or
4. vehicles involved in the accident.

Subject to the limit shown on the Declarations Page, the most *we* will pay for funeral expenses incurred for any one *insured* is $3,000.

**Nonduplication**

*We* will not pay any *medical expenses* or funeral expenses under Medical Payments Coverage that have already been paid:

1. as damages under Liability Coverage or Uninsured Motor Vehicle Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*; or
2. by or on behalf of a party who is legally liable for the *insured's bodily injury*.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO IS STRUCK AS A *PEDESTRIAN* BY A MOTOR VEHICLE, *OWNED BY* THAT *INSURED OR YOU*, IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;
2. IF ANY WORKERS' COMPENSATION LAW OR ANY SIMILAR LAW APPLIES TO THAT *INSURED'S BODILY INJURY*;
3. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;
4. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to:
   a. the use of a *private passenger car* on a share-the-expense basis; or
   b. an *insured* while *occupying* a *non-owned car* as a passenger;
5. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT

*INSURED S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:
   a. *you*; or
   b. any *resident relative*
   while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer*;
6. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;
7. WHILE MAINTAINING OR USING A *NON-OWNED CAR* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;
8. WHO IS EITHER *OCCUPYING* OR STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES;
9. WHO IS STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT:
   a. IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR
   b. RUNS ON RAILS OR CRAWLER-TREADS;
10. WHOSE *BODILY INJURY* RESULTS FROM WAR OF ANY KIND;
11. WHOSE *BODILY INJURY* RESULTS FROM:
    a. NUCLEAR REACTION;
    b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR
    c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;
12. WHOSE *BODILY INJURY* RESULTS FROM THE DISCHARGE OF A FIREARM;
13. WHOSE *BODILY INJURY* RESULTS FROM EXPOSURE TO *FUNGI*; OR
14. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS:
    a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR
    b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH SPEED DRIVING.

9
9801A

10
9801A

**If Other Medical Payments Coverage or Similar Vehicle Insurance Applies**

1. An *insured* shall not recover for the same *medical expenses* or funeral expenses under both this coverage and other medical payments coverage or similar vehicle insurance.

2. If Medical Payments Coverage provided by this policy and one or more other vehicle policies issued to one or any *resident relative* by one or more of the *State Farm Companies* apply to the same *bodily injury*, then:

   a. the Medical Payments Coverage limits of such policies shall not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

3. The Medical Payments Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car* or a *trailer* attached to it.

   a. If:

   (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and

   (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

   then *we* will pay the proportion of *medical expenses* and funeral expenses payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.

   b. If:

   (1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and

   (2) medical payments coverage or other similar vehicle insurance provided by

one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then the *State Farm Companies* will pay the proportion of *medical expenses* and funeral expenses payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 2. above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.

4. Except as provided in 3. above, the Medical Payments Coverage provided by this policy applies as excess coverage.

   a. If:

   (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

   (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

   then *we* will pay the proportion of *medical expenses* and funeral expenses payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

   b. If:

   (1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

   (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

   then the *State Farm Companies* will pay the proportion of *medical expenses* and funeral expenses payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 2. above bears to the sum of such amount and

the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*;

4. A *person* authorized by law to receive such payment; or

5. Any *person* or organization that provides the *medical services* or funeral services.

## UNINSURED MOTOR VEHICLE COVERAGE

This policy provides Uninsured Motor Vehicle Coverage if "U" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means:

1. *you*;

2. *resident relatives*;

3. any other *person* while *occupying*:

   a. *your car*;

   b. a *newly acquired car*; or

   c. a *temporary substitute car*.

   Such vehicle must be used within the scope of *your* consent. Such other *person occupying* a vehicle used to carry *persons* for a charge is not an *insured*; and

4. any *person* entitled to recover damages as a result of *bodily injury* to an *insured* as defined in 1., 2., or 3. above.

*Uninsured Motor Vehicle* means a land motor vehicle:

1. the ownership, maintenance, and use of which is:

   a. not insured or bonded for bodily injury liability at the time of the accident; or

   b. insured or bonded for bodily injury liability at the time of the accident; but

   (1) the limits are less than required by the financial responsibility law of Alabama; or

   (2) the insuring company:

      (a) denies that its policy provides liability coverage for damages that result from the accident; or

      (b) is or becomes insolvent; or

   (3) the sum of the limits of liability under all bodily injury liability bonds and insurance policies available to an *insured* after an accident is less than the

damages which the *insured* is legally entitled to recover; or

2. the owner and driver of which remain unknown and which was the proximate cause of *bodily injury* to an *insured*.

*Uninsured Motor Vehicle* does not include a land motor vehicle:

1. whose ownership, maintenance, or use is provided Liability Coverage by this policy;

2. *owned by*, rented to, or operated by a self-insurer under any motor vehicle financial responsibility law, any motor carrier law, or any similar law;

3. designed for use primarily off public roads except while on public roads; or

4. while located for use as a dwelling or other premises.

**Insuring Agreement**

*We* will pay damages for *bodily injury* an *insured* is legally entitled to recover from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be:

1. sustained by an *insured*; and

2. caused by an accident that involves the operation, maintenance, or use of an *uninsured motor vehicle* as a motor vehicle.

**Consent to Settlement**

The *insured* must inform *us* of a settlement offer proposed by or on behalf of the owner or driver of the *uninsured motor vehicle* that is acceptable to the *insured*. The *insured* must request *our* written consent to accept such settlement offer.

If *we*:

1. consent in writing, then the *insured* may accept such settlement offer.

2. inform the *insured* in writing that *we* do not consent, then the *insured* may not accept such settlement offer and

a.  **we** will make payment to the **insured** in an
    amount equal to such settlement offer in
    order to preserve **our** right of subrogation
    against the owner and driver of the **unin-
    sured motor vehicle**; and

b.  any recovery from or on behalf of the
    owner or driver of the **uninsured motor
    vehicle** shall first be used to repay **us**.

**Deciding Fault and Amount**

1.  a.  In order to resolve a claim under this cover-
        age, the **insured** and **we** must agree to the an-
        swers to the following two questions:

        (1)  Is the **insured** legally entitled to re-
             cover damages from the owner or
             driver of the **uninsured motor vehicle**?

        (2)  If the **insured** and **we** agree that the
             answer to 1.a.(1) above is yes, then
             what is the amount of the damages
             that the **insured** is legally entitled to
             recover from the owner or driver of
             the **uninsured motor vehicle**?

    b.  If there is no agreement on the answer to ei-
        ther question in 1.a. above and the **insured**
        chooses to seek resolution of the claim under
        this policy, then the **insured** shall:

        (1)  file a lawsuit, in a state or federal
             court that has jurisdiction, against any
             or all of the following:

             (a)  **us**;

             (b)  the owner and driver of the **unin-
                  sured motor vehicle** unless **we**
                  have consented to a settlement of-
                  fer proposed by or on behalf of
                  such owner or driver; and

             (c)  any other party or parties who
                  may be legally liable for the **in-
                  sured's** damages.

             If the **insured** does not include **us** in a
             lawsuit filed against a party described in
             1.b.(1)(b) or 1.b.(1)(c) above, then the
             **insured** must give **us** reasonable notice
             of the lawsuit and **we** have the right to
             seek intervention in such lawsuit.

             If the **insured** files a lawsuit only
             against **us**, and **we** have not consented to
             a settlement offer proposed by or on be-
             half of the owner or driver of the **unin-
             sured motor vehicle**, **we** have the right
             to join the owner and driver of the **un-
             insured motor vehicle** in the lawsuit. If
             **we** join the owner and driver of the **un-
             insured motor vehicle** in the lawsuit, **we**
             may then opt out of the lawsuit.

        (2)  consent to a jury trial if requested by **us**;

        (3)  agree that **we** may contest the issues
             of liability and the amount of dam-
             ages; and

        (4)  secure a judgment in that action. The
             judgment must be the final result of an
             actual trial and any appeals, if any ap-
             peals are taken.

2.  **We** are not bound by any:

    a.  judgment obtained without **our** written
        consent; and

    b.  default judgment against any **person** or or-
        ganization other than **us**

    unless **we** were given reasonable notice of the
    lawsuit in which the judgment was obtained.

**Limits**

1.  The Uninsured Motor Vehicle Coverage limits
    are shown on the Declarations Page under "Un-
    insured Motor Vehicle Coverage – Bodily In-
    jury Limits – Each Person; Each Accident".

    a.  The most **we** will pay for all damages re-
        sulting from **bodily injury** to any one **in-
        sured** injured in any one accident,
        including all damages sustained by other
        **insureds** as a result of that **bodily injury**, is
        the lesser of:

        (1)  the amount of all damages resulting
             from that **insured's bodily injury** re-
             duced by the sum of the limits of li-
             ability coverage under all bodily
             injury liability bonds and insurance
             available to the **insured** after the acci-
             dent; or

        (2)  the limit shown under "Each Person".

    b.  The limit shown under "Each Accident" is
        the most **we** will pay, subject to the limit
        for "Each Person", for all damages result-
        ing from **bodily injury** to two or more **in-
        sureds** injured in the same accident.

    These Uninsured Motor Vehicle Coverage lim-
    its are the most **we** will pay regardless of the
    number of:

    a.  **insureds**;

    b.  claims made; or

    c.  vehicles involved in the accident.

**Nonduplication**

**We** will not pay under Uninsured Motor Vehicle
Coverage any damages:

13
9801A

1.  that have already been paid to or for the **insured**

    a.  by or on behalf of any **person** or organiza-
        tion who is or may be held legally liable
        for the **bodily injury** to the **insured**; or

    b.  for **bodily injury** under Liability Coverage
        of any policy issued by the **State Farm
        Companies** to you or any **resident relative**;

2.  that:

    a.  have already been paid;

    b.  could have been paid; or

    c.  could be paid

    to or for the **insured** under any workers' compen-
    sation law, disability benefits law, or similar law; or

3.  that have already been paid as expenses under
    Medical Payments Coverage of this policy, the
    medical payments coverage of any other pol-
    icy, or other similar vehicle insurance.

**Exclusions**

THERE IS NO COVERAGE:

1.  FOR AN **INSURED** WHO, WITHOUT **OUR**
    WRITTEN CONSENT, SETTLES WITH ANY
    **PERSON** OR ORGANIZATION WHO MAY
    BE LIABLE FOR THE **BODILY INJURY** AND
    THEREBY IMPAIRS **OUR** RIGHT TO RE-
    COVER **OUR** PAYMENTS;

2.  FOR AN **INSURED** WHOSE **BODILY IN-
    JURY** RESULTS FROM THE DISCHARGE
    OF A FIREARM;

3.  TO THE EXTENT IT BENEFITS:

    a.  ANY WORKERS' COMPENSATION OR
        DISABILITY BENEFITS INSURANCE
        COMPANY;

    b.  A SELF-INSURER UNDER ANY
        WORKERS' COMPENSATION LAW,
        DISABILITY BENEFITS LAW, OR
        SIMILAR LAW; OR

    c.  ANY GOVERNMENT OR ANY OF ITS
        POLITICAL SUBDIVISIONS OR
        AGENCIES; OR

4.  FOR ANY ORDER OF RESTITUTION IS-
    SUED BY A COURT IN A CRIMINAL PRO-
    CEEDING OR EQUITABLE ACTION.

**If Other Uninsured Motor Vehicle Coverage Applies**

1.  If more than one vehicle is described on the
    Declarations Page, then the recovery by an **in-
    sured** shall be limited to the primary coverage
    plus such additional coverage as may be pro-
    vided for additional vehicles but not to exceed
    two additional coverages within the policy.

2.  The Uninsured Motor Vehicle Coverage pro-
    vided by this policy applies as primary cover-
    age for an **insured** who sustains **bodily injury**
    while **occupying your car**.

3.  Except as provided in item 2. above, the Unin-
    sured Motor Vehicle Coverage provided by this
    policy applies as excess coverage.

    If uninsured motor vehicle coverage is pro-
    vided on an excess basis by one or more other
    sources, then **we** will pay the proportion of
    damages that the applicable limit of this policy
    bears to the total of all uninsured motor vehicle
    coverage that applies as primary coverage.

**Our Payment Options**

**We** may, at **our** option, make payment to one or
more of the following:

1.  The **insured**;

2.  The **insured's** surviving spouse;

3.  A parent or guardian of the **insured**, if the **in-
    sured** is a minor or an incompetent **person**; or

4.  A **person** authorized by law to receive such
    payment.

14
9801A

**PHYSICAL DAMAGE COVERAGES**

The physical damage coverages are Comprehensive
Coverage, Collision Coverage, Emergency Road
Service Coverage, and Car Rental and Travel Ex-
penses Coverage.

This policy provides:

1.  Comprehensive Coverage if "D";

2.  Collision Coverage if "G";

3.  Emergency Road Service Coverage if "H";

4.  Car Rental and Travel Expenses Coverage if "R1"

is shown under "SYMBOLS" on the Declarations Page.

If a deductible applies to Comprehensive Coverage,
then it is shown on the Declarations Page. The de-
ductible that applies to Collision Coverage is shown
on the Declarations Page.

**Additional Definitions**

*Covered Vehicle* means:

1. *your car*;
2. a *newly acquired car*;
3. a *temporary substitute car*;
4. a camper that is designed to be mounted on a pickup truck and shown on the Declarations Page;
5. a *non-owned car* while it is:
   a. being driven by an *insured*; or
   b. in the custody of an *insured* if at the time of the *loss* it is:
      (1) not being driven; or
      (2) being driven by a *person* other than an *insured* and being *occupied* by an *insured*; and
6. a *non-owned trailer* and a *non-owned camper* while it is being used by an *insured*;

including its parts and its equipment that are common to the use of the vehicle as a vehicle. However, parts and equipment of *trailers* and campers must be securely fixed as a permanent part of the *trailer* or camper.

*Daily rental charge* means the sum of:

1. the daily rental rate;
2. mileage charges; and
3. related taxes.

*Loss* means:

1. direct, sudden, and accidental damage to; or
2. total or partial theft of

a *covered vehicle*. *Loss* does not include any reduction in the value of any *covered vehicle* after it has been repaired, as compared to its value before it was damaged.

*Loss Caused By Collision* means a *loss* caused by:

1. a *covered vehicle* hitting or being hit by another vehicle or other object; or
2. the overturning of a *covered vehicle*.

Any *loss* caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal is not a *Loss Caused By Collision*.

*Non-Owned Camper* means a camper designed to be mounted on a pickup truck that is in the lawful possession of an *insured* and that neither:

1. is *owned* by:
   a. an *insured*;
   b. any other *person* who lives primarily in *your* household; or
   c. an employer of any *person* described in a. or b. above; nor
2. has been used by, rented by, or in the possession of an *insured* during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss*.

*Non-Owned Trailer* means a *trailer* that is in the lawful possession of an *insured* and that neither:

1. is *owned* by:
   a. an *insured*;
   b. any other *person* who lives primarily in *your* household; or
   c. an employer of any *person* described in a. or b. above; nor
2. has been used by, rented by, or in the possession of an *insured* during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss*.

**Insuring Agreements**

1. **Comprehensive Coverage**

   *We* will pay:

   a. for *loss*, except *loss caused by collision*, to a *covered vehicle*; and
   b. transportation expenses incurred by an *insured* as a result of the total theft of *your car* or a *newly acquired car*. These transportation expenses are payable:
      (1) during the period that:
         (a) starts on the date *you* report the theft to *us*; and
         (b) ends on the earliest of:
            (i) the date the vehicle is returned to *your* possession in a drivable condition;
            (ii) the date *we* offer to pay *you* for the *loss* if the vehicle has not yet been recovered; or
            (iii) the date *we* offer to pay *you* for the *loss* if the vehicle is recovered, but is a total loss as determined by *us*; and
      (2) during the period that:
         (a) starts on the date the vehicle is left at a repair facility if the stolen vehicle is recovered, returned to *your* possession in a drivable condition, and has unrepaired damage that resulted from the total theft; and
         (b) ends on the date the vehicle is repaired.

   These transportation expenses must be reported to *us* before *we* will pay such incurred expenses.

2. **Collision Coverage**

   *We* will pay for *loss caused by collision* to a *covered vehicle*.

3. **Emergency Road Service Coverage**

   *We* will pay the fair cost incurred by an *insured* for:

   a. up to one hour of labor to repair a *covered vehicle* at the place of its breakdown;
   b. towing to the nearest repair facility where necessary repairs can be made if a *covered vehicle* is not drivable;
   c. towing a *covered vehicle* out of a location where it is stuck if the vehicle is on or immediately next to a public road;
   d. delivery of gas, oil, battery, or tire necessary to return a *covered vehicle* to driving condition. *We* do not pay the cost of the gas, oil, battery, or tire; and
   e. up to one hour of labor for locksmith services to unlock a *covered vehicle* if its key is lost, stolen, or locked inside the vehicle.

4. **Car Rental and Travel Expenses Coverage**

   a. **Car Rental Expense**

      *We* will pay the *daily rental charge* incurred when *you* rent a *car* from a *car business* while *your car* or a *newly acquired car* is:
      (1) not drivable; or
      (2) being repaired
      as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage. The *loss* must occur during a period that:
      (1) starts on the date:
         (a) the vehicle is not drivable as a result of the *loss*; or
         (b) the vehicle is left at a repair facility if the vehicle is drivable; and
      (2) ends on the earliest of:
         (a) the date the vehicle has been repaired or replaced;
         (b) the date *we* offer to pay *you* for the *loss* if the vehicle is repairable but *you* choose to delay repairs; or
         (c) five days after *we* offer to pay *you* for the *loss* if the vehicle is:
            (i) a total loss as determined by *us*; or
            (ii) stolen and not recovered.

      The amount of any such *daily rental charge* incurred by *you* must be reported to *us* before *we* will pay such amount.

   b. **Travel Expenses**

      *We* will pay expenses for commercial transportation, lodging, and meals if *your car* or a *newly acquired car* is not drivable as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage. The *loss* must occur more than 50 miles from *your* home. *We* will only pay these expenses if they are incurred by:
      (1) an *insured* during the period that:
         (a) starts after the *loss* occurs; and
         (b) ends on the earlier of:
            (i) the *insured's* arrival at his or her destination or home if the vehicle is left behind for repairs; or
            (ii) the repair of the vehicle if the *insured* waits for repairs before continuing on to his or her destination or returning home; and
      (2) *you*, or any *person* *you* choose, to travel to retrieve the vehicle and drive it to either the original destination or *your* home if the vehicle was left behind for repairs.

      These expenses must be reported to *us* before *we* will pay such incurred expenses.

   c. **Rental Car – Repayment of Deductible Expense**

      *We* will pay the comprehensive deductible or collision deductible an *insured* is required to pay the owner of a *car* rented from a *car business*.

**Supplementary Payments – Comprehensive Coverage and Collision Coverage**

If Symbol "D" is shown on the Declarations Page and the *covered vehicle* sustains *loss* for which *we* make a payment under Comprehensive Coverage, or if Symbol "G" is shown on the Declarations Page and the *covered vehicle* sustains *loss* for which *we* make a payment under Collision Coverage, then *we* will pay reasonable expenses incurred to:

1.  tow the *covered vehicle* immediately after the *loss*.

    a.  for a reasonable distance from the location of the *loss* to any one repair facility chosen by an *insured* or the owner of the *covered vehicle*, if the *covered vehicle* is not drivable; or

    b.  to any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*. *We* will also pay reasonable expenses incurred to tow the *covered vehicle* for a reasonable distance from this facility to any one repair facility chosen by an *insured* or the owner of the *covered vehicle*, if the *covered vehicle* is not drivable.

2.  store the *covered vehicle*, if it is not drivable immediately after the *loss*, at:

    a.  any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*; and

    b.  any one repair facility chosen by the owner of the *covered vehicle*, and *we* determine such vehicle is a total loss.

    If the owner of the *covered vehicle* consents, then *we* may move the *covered vehicle* at *our* expense to reduce storage costs. If the owner of the *covered vehicle* does not consent, then *we* will pay only the storage costs that would have resulted if *we* had moved the damaged *covered vehicle*; and

3.  clean up debris from the *covered vehicle* at the location of the *loss*. The most *we* will pay to clean up the debris is $250 for any one *loss*.

**Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage**

1.  *We* have the right to choose to settle with *you* or the owner of the *covered vehicle* in one of the following ways:

    a.  Pay the cost to repair the *covered vehicle* minus any applicable deductible.

        (1)  *We* have the right to choose one of the following to determine the cost to repair the *covered vehicle*:

(a)  The cost agreed to by both the owner of the *covered vehicle* and *us*;

(b)  A bid or repair estimate approved by *us*; or

(c)  A repair estimate that is written based upon or adjusted to:

    (i)  the prevailing competitive price;

    (ii)  the lower of paintless dent repair pricing established by an agreement *we* have with a third party or the paintless dent repair price that is competitive in the market; or

    (iii)  a combination of (i) and (ii) above.

    The prevailing competitive price means prices charged by a majority of the repair market in the area where the *covered vehicle* is to be repaired as determined by a survey made by *us*. If asked, *we* will identify some facilities that will perform the repairs at the prevailing competitive price. The estimate will include parts sufficient to restore the *covered vehicle* to its pre-loss condition.

*You* agree with *us* that the repair estimate may include new, used, recycled, and reconditioned parts. Any of these parts may be either original equipment manufacturer parts or non-original equipment manufacturer parts.

*You* also agree that replacement glass need not have any insignia, logo, trademark, etching, or other marking that was on the replaced glass.

    (2)  The cost to repair the *covered vehicle* does not include any reduction in the value of the *covered vehicle* after it has been repaired, as compared to its value before it was damaged.

    (3)  If the repair or replacement of a part results in betterment of that part, then *you* or the owner of the *covered vehicle* must pay for the amount of the betterment.

    (4)  If *you* and *we* agree, then windshield glass will be repaired instead of replaced.

    b.  Pay the actual cash value of the *covered vehicle* minus any applicable deductible. The damaged *covered vehicle* must be given to *us* in exchange for *our* payment,

unless *we* agree that the owner may keep it. If the owner keeps the *covered vehicle*, then *our* payment will be reduced by the value of the *covered vehicle* after the *loss*.

    c.  Return the stolen *covered vehicle* to its owner and pay, as described in 1.a. above, for any direct, sudden, and accidental damage that resulted from the theft.

2.  The most *we* will pay for transportation expenses under Comprehensive Coverage is $25 per day subject to an aggregate limit of $750 per *loss*.

3.  The most *we* will pay for a *non-owned trailer* or a *non-owned camper* is $2,500.

**Limits – Car Rental and Travel Expenses Coverage**

1.  **Car Rental Expense**

    The limit for Car Rental Expense is shown on the Declarations Page under "Limit – Car Rental Expense – Each Day, Each Loss".

    a.  The limit shown under "Each Day" is the most *we* will pay for the *daily rental charge*. If:

        (1)  a dollar amount is shown, then *we* will pay the *daily rental charge* up to that dollar amount;

        (2)  a percentage amount is shown, then *we* will pay that percentage of the *daily rental charge*.

    b.  Subject to the "Each Day" limit, the limit shown under "Each Loss" is the most *we* will pay for Car Rental Expense incurred as a result of any one *loss*.

2.  **Travel Expenses**

    The most *we* will pay for Travel Expenses incurred by all *insureds* as a result of any one *loss* is $500.

3.  **Rental Car – Repayment of Deductible Expense**

    The most *we* will pay for Rental Car – Repayment of Deductible Expense incurred as a result of any one *loss* is $500.

**Nonduplication**

*We* will not pay for any *loss* or expense under the Physical Damage Coverages for which the *insured* or owner of the *covered vehicle* has already received payment from, or on behalf of, a party who is legally liable for the *loss* or expense.

**Exclusions**

THERE IS NO COVERAGE FOR:

1.  ANY *COVERED VEHICLE* THAT IS:

    a.  INTENTIONALLY DAMAGED; OR

    b.  STOLEN

    BY OR AT THE DIRECTION OF AN *INSURED*.

2.  ANY *COVERED VEHICLE* WHILE IT IS RENTED OR LEASED TO OTHERS BY AN *INSURED*.

3.  ANY *COVERED VEHICLE* WHILE IT IS USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

4.  ANY *COVERED VEHICLE* DUE TO:

    a.  THEFT;

    b.  CONVERSION;

    c.  EMBEZZLEMENT; OR

    d.  SECRETION

    BY AN *INSURED*, A CONSIGNEE, AN AGENT OF A CONSIGNEE, OR A *PERSON* WHO OBTAINS POSSESSION OF THE *COVERED VEHICLE* WITH THE PERMISSION OR A CONSIGNEE OR AGENT OF A CONSIGNEE;

5.  *LOSS* TO *YOUR CAR* OR A *NEWLY AC-QUIRED CAR* IF AN *INSURED* VOLUNTARILY RELINQUISHES POSSESSION OF THAT *CAR* TO A *PERSON* OR ORGANIZATION UNDER AN ACTUAL OR PRESUMED SALES AGREEMENT;

6.  ANY *COVERED VEHICLE* TO THE EXTENT *OUR* PAYMENT WOULD BENEFIT ANY CARRIER OR OTHER BAILEE FOR HIRE THAT IS LIABLE FOR *LOSS* TO SUCH *COVERED VEHICLE*;

7.  *LOSS* TO ANY *COVERED VEHICLE* DUE TO *FUNGI*. THIS APPLIES REGARDLESS OF WHETHER OR NOT THE *FUNGI* RESULT FROM A *LOSS* THAT IS PAYABLE UNDER ANY OF THE PHYSICAL DAMAGE COVERAGES. *WE* WILL ALSO NOT PAY FOR ANY TESTING OR REMEDIATION OF *FUNGI*, OR ANY ADDITIONAL COSTS REQUIRED TO REPAIR ANY *COVERED VEHICLE* THAT ARE DUE TO THE EXISTENCE OF *FUNGI*;

8.  *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM:

    a.  NUCLEAR REACTION;

    b.  RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

    c.  THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

9. **LOSS** TO ANY **COVERED VEHICLE** THAT RESULTS FROM THE TAKING OF OR SEIZURE OF THAT **COVERED VEHICLE** BY ANY GOVERNMENTAL AUTHORITY;

10. **LOSS** TO ANY **COVERED VEHICLE** THAT RESULTS FROM WAR OF ANY KIND;

11. **YOUR CAR** WHILE SUBJECT TO ANY:

  a.  LIEN AGREEMENT;

  b.  RENTAL AGREEMENT;

  c.  LEASE AGREEMENT; OR

  d.  SALES AGREEMENT

NOT SHOWN ON THE DECLARATIONS PAGE;

12. ANY **NON-OWNED CAR** WHILE IT IS:

  a.  BEING MAINTAINED OR USED BY ANY **PERSON** WHILE THAT **PERSON** IS EMPLOYED IN OR ENGAGED IN ANY WAY IN A **CAR BUSINESS**; OR

  b.  USED IN ANY BUSINESS OR OCCUPATION OTHER THAN A **CAR BUSINESS**. This exclusion (12.b.) does not apply to a *private passenger car*;

13. ANY PART OR EQUIPMENT OF A **COVERED VEHICLE** IF THAT PART OR EQUIPMENT:

  a.  FAILS OR IS DEFECTIVE; OR

  b.  IS DAMAGED AS A DIRECT RESULT OF:

    (1)  WEAR AND TEAR;

    (2)  FREEZING; OR

    (3)  MECHANICAL, ELECTRICAL, OR ELECTRONIC BREAKDOWN OR MALFUNCTION

OF THAT PART OR EQUIPMENT.

This exclusion does not apply if the *loss* is the result of theft of the *covered vehicle*;

14. ANY PART OR EQUIPMENT:

  a.  THAT IS NOT LEGAL FOR USE IN OR ON THE **COVERED VEHICLE** IN THE JURISDICTION WHERE THE **COVERED VEHICLE** IS REGISTERED; OR

  b.  THE USE OF WHICH IS NOT LEGAL IN THE JURISDICTION WHERE THE **COVERED VEHICLE** IS REGISTERED BECAUSE OF HOW OR WHERE THAT PART OR EQUIPMENT IS INSTALLED IN OR ON THE **COVERED VEHICLE**.

However, if there is a legal version of the part or equipment that is necessary for the safe operation of the *covered vehicle*, then we will pay the cost that *we* would otherwise have paid to repair the vehicle with the legal version of the part or equipment. *We* will not pay any cost necessary to modify the vehicle for installation of the legal version of the part or equipment;

15. TIRES. This exclusion does not apply if:

  a.  **loss** is caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal; or

  b.  **loss caused by collision** to another part of the *covered vehicle* causes *loss* to tires;

16. REMOVABLE PRODUCTS USED FOR STORAGE OF AUDIO, VIDEO, OR OTHER DATA, INCLUDING BUT NOT LIMITED TO TAPES, DISCS, AND MEMORY CARDS, NOR IS THERE COVERAGE FOR THE RECONSTRUCTION OF DATA CONTAINED THEREIN;

17. ANY EQUIPMENT USED TO DETECT OR INTERFERE WITH SPEED MEASURING DEVICES;

18. A CAMPER, INCLUDING ITS PARTS AND ITS EQUIPMENT, THAT IS:

  a.  DESIGNED TO BE MOUNTED ON A PICKUP TRUCK;

  b.  **OWNED BY** AN **INSURED**; AND

  c.  NOT SHOWN ON THE DECLARATIONS PAGE; OR

19. ANY **COVERED VEHICLE** WHILE IT IS:

  a.  BEING PREPARED FOR USE IN, PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

  b.  ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH SPEED DRIVING

**If Other Physical Damage Coverage or Similar Coverage Applies**

1. If the same *loss* or expense is payable under more than one of the physical damage coverages provided by this policy, then only the one coverage that pays the most for that *loss* or expense applies.

2. If any of the physical damage coverages provided by this policy and one or more other policies issued to an *insured* by one or more of the **State Farm Companies** apply to the same *loss* or expense, then only one policy applies. *We* will select a policy that pays the most for the *loss* or expense.

3. The physical damage coverages provided by this policy apply as primary coverage for a *loss* to *your car*.

If similar coverage provided by one or more sources other than the **State Farm Companies** also applies as primary coverage for the same *loss* or expense, then the **State Farm Companies** will pay the proportion of the *loss* or expense payable as primary that the maximum amount that may be paid by the **State Farm Companies** bears to the sum of such amount and the limits of all other similar coverage that applies as primary coverage.

4. Except as provided in 3. above, the physical damage coverages provided by this policy apply as excess coverage.

If similar coverage provided by one or more sources other than the **State Farm Companies** also applies as excess coverage for the same *loss* or expense, then the **State Farm Companies** will pay the proportion of the *loss* or expense payable as excess that the maximum amount that may be paid by the **State Farm Companies** bears to the sum of such amount and the limits of all other similar coverage that applies as excess coverage.

**Financed Vehicle**

1. If a creditor is shown on the Declarations Page, then any Comprehensive Coverage or Collision Coverage provided by this policy applies to that creditor's interest in *your car*. Coverage for the creditor's interest is only provided for a *loss* that is payable to *you*.

However, if this policy is cancelled or nonrenewed, then *we* will provide coverage for the creditor's interest until *we* notify the creditor of the termination of such coverage. This coverage for the creditor's interest is only provided for a *loss* that would have been payable to *you* if this policy had not been cancelled or nonrenewed.

The date such termination is effective will be at least 10 days after the date *we* mail or electronically transmit a notice of the termination to the creditor. The mailing or electronic transmittal of the notice will be sufficient proof of notice.

2. If *we* pay such creditor, then *we* are entitled to the creditor's right of recovery against *you* to the extent of *our* payment. *Our* right of recovery does not impair the creditor's right to recover the full amount of its claim.

**Our Payment Options**

1. **Comprehensive Coverage and Collision Coverage**

  a.  *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle owned by you*:

    (1)  *You*;

    (2)  The repairer; or

    (3)  A creditor shown on the Declarations Page, to the extent of its interest.

  b.  *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle not owned by you*:

    (1)  *You*;

    (2)  The owner of such vehicle;

    (3)  The repairer; or

    (4)  A creditor, to the extent of its interest.

2. **Emergency Road Service Coverage and Car Rental and Travel Expenses Coverage**

*We* may, at *our* option, make payment to one or more of the following:

  a.  *You*;

  b.  The *insured* who incurred the expense; or

  c.  Any party that provided the service for which payment is owed.

## DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE AND LOSS OF EARNINGS COVERAGE

### DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE

This policy provides Death, Dismemberment and Loss of Sight Coverage if "S" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

*Insured* means a *person* whose name is shown under "Death, Dismemberment and Loss of Sight Coverage – Persons Insured" on the Declarations Page.

**Insuring Agreement**

*We* will pay the highest applicable benefit shown in the following Death, Dismemberment and Loss of Sight Benefits Schedules if an *insured*:

1. dies; or

2. suffers dismemberment or permanent loss of sight, as described in the schedule

as the direct result of an accident that involves the use of a land motor vehicle or any type of trailer as a vehicle and not due to any other cause.

The *insured* must be *occupying* or be struck as a *pedestrian* by a land motor vehicle or any type of trailer at the time of the accident. The death, dismemberment, or permanent loss of sight must occur within 90 days after the date of the accident.

**Benefit**

The applicable benefit shown in the schedule is the most *we* will pay for any one *insured* in any one accident. Any benefit paid or payable for dismemberment or permanent loss of sight reduces the death benefit.

### DEATH, DISMEMBERMENT AND LOSS OF SIGHT BENEFITS SCHEDULES

| | |
|---|---|
| The amount shown on the Declarations Page for the *insured* is $5,000, then *we* will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight. | |
| Death | $5,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand & one foot; or one hand or one foot & all sight of one eye | $5,000 |
| Loss of one hand or one foot; or all sight of one eye | $2,500 |
| Loss of the thumb & a finger on one hand; or any three fingers | $1,500 |
| Loss of any two fingers | $1,000 |
| The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off. | |

If the amount shown on the Declarations Page for the *insured* is $10,000, then *we* will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight:

| | |
|---|---|
| Death | $10,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand & one foot; or one hand or one foot & all sight of one eye | $10,000 |
| Loss of one hand or one foot; or all sight of one eye | $5,000 |
| Loss of the thumb & a finger on one hand; or any three fingers | $3,000 |
| Loss of any two fingers | $2,000 |
| The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off. | |

The benefits shown in the schedules are doubled for an *insured* who at the time of the accident was *occupying* a *private passenger car* and using a seat belt in the manner recommended by the vehicle's manufacturer.

### LOSS OF EARNINGS COVERAGE

This policy provides Loss of Earnings Coverage if "Z" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means a *person* whose name is shown under "Loss of Earnings Coverage – Persons Insured" on the Declarations Page.

*Total Disability* means the *insured's* inability to work, either full or part time, in his or her occupation or any other similar occupation for which he or she is reasonably fitted by education, training, or experience.

*Weekly Earnings* means 85% of all earnings for the *insured's* services before any deductions. When *weekly earnings* cannot be determined on a weekly basis an average will be used. The average is 85% of total earnings for the 52 weeks just prior to the accident divided by 52.

**Insuring Agreement**

*We* will pay the *insured* his or her loss of *weekly earnings*, which occur while the *insured* is living, due to continuous *total disability* that:

1. is the direct result of *bodily injury* caused by an accident that involves the use of a land motor vehicle or any type of trailer as a vehicle

and not due to any other cause. At the time of the accident, the *insured* must be *occupying* or be struck as a *pedestrian* by a land motor vehicle or any type of trailer; and

2. starts within 20 days after the date of the accident and lasts for a period of at least 30 consecutive days. *We* will not pay for the first seven days of the 30 day period.

**Limit**

The most *we* will pay any one *insured* is:

1. $250 for each full workweek of *total disability*; and

2. a pro rata portion of $250 for less than a full workweek of *total disability*.

Subject to the workweek limit, the most *we* will pay any one *insured* for all loss of *weekly earnings* due to any one accident is $15,000.

*We* will pay once every two weeks the *insured's* loss of *weekly earnings* owed.

**Exclusions – Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage**

DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE AND LOSS OF EARNINGS COVERAGE DO NOT APPLY TO AN *INSURED*:

1. WHILE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN A *CAR BUSINESS*.

2. WHILE *OCCUPYING*, LOADING, OR UN-LOADING:

   a. AN EMERGENCY VEHICLE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT;

   b. A VEHICLE OTHER THAN AN EMERGENCY VEHICLE, WHILE USED IN THE:

     (1) *INSURED S* BUSINESS; OR

     (2) COURSE AND SCOPE OF HIS OR HER EMPLOYMENT BY OTHER THAN A *CAR BUSINESS*.

   This exclusion (2.b.) does not apply if the vehicle is a *private passenger car*;

   c. A MILITARY VEHICLE; OR

   d. A VEHICLE WHILE IT IS:

     (1) BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING

CONTEST, OR ANY SIMILAR CONTEST; OR

     (2) ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH SPEED DRIVING.

3. WHILE *OCCUPYING*, LOADING, UN-LOADING, OR WHO IS STRUCK AS A *PE-DESTRIAN* BY:

   a. A MOTOR VEHICLE THAT RUNS ON RAILS OR CRAWLER-TREADS;

   b. A MOTOR VEHICLE THAT IS DE-SIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

   c. A MOTOR VEHICLE OR ANY TYPE OF TRAILER, EITHER OF WHICH IS LO-CATED FOR USE AS A DWELLING OR OTHER PREMISES; OR

4. FOR DEATH, DISMEMBERMENT, LOSS OF SIGHT, OR *TOTAL DISABILITY* THAT RESULTS FROM:

   a. WAR OF ANY KIND;

   b. NUCLEAR REACTION, RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE, OR THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

   c. THE DISCHARGE OF A FIREARM;

   d. EXPOSURE TO *FUNGI*;

   e. SUICIDE OR ATTEMPTED SUICIDE, REGARDLESS OF WHETHER THE *IN-SURED* WAS SANE OR INSANE; OR

   f. DISEASE except pus-forming infection due to *bodily injury* sustained in the accident.

**Our Payment Options – Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*.

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* or organization authorized by law to receive such payment.

21
9801A

22
9801A

## INSURED'S DUTIES

**1. Notice to Us of an Accident or Loss**

The *insured* must give *us* or one of *our* agents notice of the accident or *loss* as soon as reasonably possible. The notice must give *us*:

a.  *your* name;

b.  the names and addresses of all *persons* involved in the accident or *loss*;

c.  the hour, date, place, and facts of the accident or *loss*; and

d.  the names and addresses of witnesses to the accident or *loss*.

**2. Notice to Us of a Claim or Lawsuit**

a.  If a claim is made against an *insured*, then that *insured* must immediately send *us* every demand, notice, and claim received.

b.  If a lawsuit is filed against an *insured*, then that *insured* must immediately send *us* every summons and legal process received.

**3. Insured's Duty to Cooperate With Us**

a.  The *insured* must cooperate with *us* and, when asked, assist *us* in:

  (1)  making settlements;

  (2)  securing and giving evidence; and

  (3)  attending, and getting witnesses to attend, depositions, hearings, and trials.

b.  The *insured* must not, except at his or her own cost, voluntarily:

  (1)  make any payment to others; or

  (2)  assume any obligation to others

  unless authorized by the terms of this policy.

c.  Any *person* or organization making claim under this policy must, when *we* require, give *us* proof of loss on form *we* furnish.

**4. Questioning Under Oath**

Under:

a.  Liability Coverage, each *insured*;

b.  Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Death, Dismemberment and Loss of Sight Coverage, or Loss of Earnings Coverage, each *insured*, or any other *person* or organization making claim or seeking payment; and

c.  Physical Damage Coverage, each *insured* or owner of a *covered vehicle*, or any other *person* or organization making claim or seeking payment;

must, at *our* option, submit to an examination under oath, provide a statement under oath, or do both, as reasonably often as *we* require. Such *person* or organization must answer questions under oath, asked by anyone *we* name, and sign copies of the answers. *We* may require each *person* or organization answering questions under oath to answer the questions with only that *person's* or organization's legal representative, and any *person* or *persons* designated by *us* to record the questions and answers, and no other *person* present.

**5. Other Duties Under the Physical Damage Coverages**

When there is a *loss*, *you* or the owner of the *covered vehicle* must:

a.  protect the *covered vehicle* from additional damage. *We* will pay any reasonable expense incurred to do so that is reported to *us*;

b.  make a prompt report to the police when the *loss* is the result of theft;

c.  allow *us* to:

  (1)  inspect any damaged property before its repair or disposal;

  (2)  test any part or equipment before that part or equipment is removed or repaired; and

  (3)  move the *covered vehicle* at *our* expense in order to conduct such inspection or testing;

d.  provide *us* all:

  (1)  records;

  (2)  receipts; and

  (3)  invoices

  that *we* request and allow *us* to make copies; and

e.  not abandon the *covered vehicle* to *us*.

**6. Other Duties Under Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Death, Dismemberment and Loss of Sight Coverage, and Loss of Earnings Coverage**

A *person* making a claim under:

a.  Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Death, Dismemberment and Loss of Sight Coverage, or Loss of Earnings Coverage must:

  (1)  notify *us* of the claim and give *us* all the details about the death, injury, treatment, and other information that

*we* may need as soon as reasonably possible after the injured *insured* is first examined or treated for the injury. If the *insured* is unable to give *us* notice, then any other *person* may give *us* the required notice;

  (2)  be examined as reasonably often as *we* may require by physicians chosen and paid by *us*. A copy of the report will be sent to the *person* upon written request;

  (3)  provide written authorization for *us* to obtain:

    (a)  medical bills;

    (b)  medical records;

    (c)  wage, salary, and employment information; and

    (d)  any other information *we* deem necessary to substantiate the claim.

  If an injured *insured* is a minor, unable to act, or dead, then his or her legal representative must provide *us* with the written authorization.

## GENERAL TERMS

**1. When Coverage Applies**

The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur during the policy period. The policy period is shown on the Declarations Page and is for successive periods of six months each for which the renewal premium is paid. The policy period begins and ends at 12:01 AM Standard Time at the address shown on the Declarations Page.

**2. Where Coverage Applies**

The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur:

a.  in the United States of America and its territories and possessions;

b.  in Canada; and

c.  while a *vehicle* for which coverage is provided by this policy is being shipped between the ports of the United States of America, its territories, its possessions, and Canada.

If the holder of the information refuses to provide it to *us* despite the authorization, then at *our* request the *person* making claim or his or her legal representative must obtain the information and promptly provide it to *us*; and

  (4)  allow *us* to inspect the vehicle that the *insured* occupied in the accident;

b.  Uninsured Motor Vehicle Coverage must report an accident, involving a motor vehicle whose owner and driver remain unknown, to the police within 24 hours and to *us* within 30 days;

c.  Uninsured Motor Vehicle Coverage must send *us* immediately a copy of all lawsuit papers if the *insured* files a lawsuit against the party liable for the accident; and

d.  Loss of Earnings Coverage must:

  (1)  make a claim under this policy;

  (2)  report to *us* when that *person* has a *total disability*; and

  (3)  provide proof of continued *total disability* when *we* ask for it.

**3. Newly Owned or Newly Leased Car**

If *you* want to insure a *car* newly *owned by you* with the *State Farm Companies* after that *car* ceases to be a *newly acquired car*, then *you* must either:

a.  request *we* replace the *car* currently shown on the Declarations Page of this policy with the *car* newly *owned by you* and pay any added amount due. If *you* make such request while this policy is in force and:

  (1)  before the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date the *car* newly *owned by you* is delivered to *you*. The added amount that will be calculated based on that date; or

  (2)  after the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date and time *you* make the request. The added amount

23
9801A

24
9801A

due will be calculated based on that date; or

b. apply to the *State Farm Companies* for a separate policy to insure the *car* newly *owned by you*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

**4. Changes to This Policy**

**a. Changes in Policy Provisions**

*We* may only change the provisions of this policy by:

(1) issuing a revised policy booklet, a revised Declarations Page, or an endorsement; or

(2) revising this policy to give broader coverage without an additional premium charge. If any coverage provided by this policy is changed to give broader coverage, then *we* will give *you* the broader coverage as of the date *we* make the change effective in the state of Alabama without issuing a revised policy booklet, a revised Declarations Page, or an endorsement.

**b. Change of Interest**

(1) No change of interest in this policy is effective unless *we* consent in writing.

(2) Except under Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage, if a named insured dies, then the definition of *insured* under each of the coverages provided by this policy is changed to include:

(a) any *person* with lawful custody of *your car*, a *newly acquired car*, or a *temporary substitute car* until a legal representative is qualified; and then

(b) the legal representative of the deceased named insured.

This only applies while such *person* is maintaining or using *your car*, a *newly acquired car*, or a *temporary substitute car*.

Policy requirements are met by mailing the notice to the deceased named insured's last known address.

**c. Joint and Individual Interests**

If *you* consists of more than one *person* or entity, then each acts for all in any way to cancel the policy.

**5. Premium**

a. Unless as otherwise provided by an alternative payment plan in effect with the *State Farm Companies* with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown on the most recently issued Declarations Page or Renewal Notice.

b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried the applicable limits, deductibles, and other elements that affect the premium that apply at the time of renewal.

c. The premium for this policy may vary based upon the purchase of other insurance from the *State Farm Companies*.

d. The premium for this policy is based upon information *we* have received from *you* or other sources. *You* must inform *us* if any information regarding the following is incorrect or incomplete, or changes during the policy period, and *you* must answer questions *we* ask regarding the following:

(1) *Your car*, or its use, including annual mileage;

(2) The *persons* who regularly drive *your car*, including newly licensed family members;

(3) *Your* marital status; or

(4) The location where *your car* is primarily garaged.

If the above information or any other information used to determine the premium is incorrect, incomplete, changes during the policy period, or is not provided to *us* when *we* ask, then *we* may decrease or increase the premium during the policy period. If *we* decrease the premium during the policy period, then *we* will provide a refund or a credit in the amount of the decrease. If *we* increase the premium during the policy period, then *you* must pay the amount of the increase.

**6. Renewal**

*We* agree to renew this policy for the next policy period upon payment of the renewal premium when due, unless *we* mail or deliver a nonrenewal notice or a cancellation notice as set forth in 7. and 8. below.

**7. Nonrenewal**

If *we* decide not to renew this policy, then, at least 30 days before the end of the current policy period, *we* will mail or deliver a nonrenewal notice

to the most recent address provided to *us* by *you* as the policy address. The mailing of the notice will be sufficient proof of notice.

**8. Cancellation**

**a. How You May Cancel**

*You* may cancel this policy by providing to *us* advance notice of the date cancellation is effective. *We* may confirm the cancellation in writing.

**b. How and When We May Cancel**

*We* may cancel this policy by mailing or delivering a written notice to the most recent address provided to *us* by *you* as the policy address. The notice will provide the date cancellation is effective.

The mailing of the notice will be sufficient proof of notice.

(1) If *we* mail or deliver a cancellation notice:

(a) during the first 59 days following this policy's effective date; or

(b) because the premium is not paid when due,

then the date cancellation is effective will be at least 10 days after the date *we* mail or deliver the cancellation notice.

Otherwise, the date cancellation is effective will be at least 20 days after the date *we* mail or deliver the cancellation notice.

(2) After this policy has been in force for more than 59 days, *we* will not cancel this policy before the end of the current policy period unless:

(a) the premium is not paid when due;

(b) *you*, any *resident relative*, or any other *person* who usually drives *your car* has:

(i) had his or her driver's license under suspension or revocation, or

(ii) been convicted of driving without having a valid driver's license

during the 180 days immediately before the effective date of the policy or during the policy period; or

(c) any *insured* made a false or fraudulent claim or knowingly aided or abetted another *person* in the presentation of such a claim.

**c. Return of Unearned Premium**

If *you* cancel this policy, then premium may be earned on a short rate basis. If *we* cancel this policy, then premium will be earned on a pro rata basis.

Any unearned premium may be returned within a reasonable time after cancellation. Delay in the return of any unearned premium does not affect the cancellation date.

**9. Assignment**

No assignment of benefits or other transfer of rights is binding upon *us* unless approved by *us*.

**10. Bankruptcy or Insolvency of the Insured**

Bankruptcy or insolvency of the *insured* or his or her estate will not relieve *us* of our obligations under this policy.

**11. Concealment or Fraud**

There is no coverage under this policy if *you* or any other *person* insured under this policy has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

**12. Our Right to Recover Our Payments**

Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage payments are not recoverable by *us*. Under all other coverages the following apply:

**a. Subrogation**

If *we* are obligated under this policy to make payment to or for a *person* or organization who has a legal right to collect from another *person* or organization, then *we* will be subrogated to that right to the extent of our payment. This applies regardless of whether or not the *person* or organization to or for whom *we* make payment is fully compensated for damages sustained in the accident.

The *person* or organization to or for whom *we* make payment must help *us* recover our payments by:

(1) doing nothing to impair that legal right;

(2) executing any documents *we* may need to assert that legal right; and

(3) taking legal action through our representatives when *we* ask.

**b. Reimbursement**

If *we* make payment under this policy and the *person* or organization to or for whom *we* make payment recovers or has recovered from another *person* or organization,

25
9801A

26
9801A

then the *person* or organization to or for whom *we* make payment must:

(1) hold in trust for *us* the proceeds of any recovery; and

(2) reimburse *us* to the extent of *our* payment.

This applies regardless of whether or not the *person* or organization to or for whom *we* make payment is fully compensated for damages sustained in the accident.

**13. Legal Action Against Us**

There is no right of action against *us*:

a. until all the terms of this policy have been met;

b. under Liability Coverage until the amount of damages an *insured* is legally liable to pay has been finally determined by:

(1) judgment after actual trial, and appeal if any; or

(2) agreement between the *insured*, the claimant, and *us*; and

c. under Medical Payments Coverage, Uninsured Motor Vehicle Coverage, any Physical Damage Coverage, Death, Dismemberment and Loss of Sight Coverage, and Loss of Earnings Coverage, until 30 days after *we* get the *insured's* notice of accident or *loss*.

**14. Choice of Law**

Without regard to choice of law rules, the law of the State of:

a. Alabama will control, except as provided in b. below, in the event of any disagreement as to the interpretation and application of any provision in this policy; and

b. Illinois will control in the event of any disagreement as to the interpretation and application of this policy's:

(1) Mutual Conditions provision found on the most recently issued Declarations Page, if this policy was issued by the State Farm Mutual Automobile Insurance Company; or

(2) Participating Policy provision found on the most recently issued Declarations Page, if this policy was issued by any subsidiary or affiliate of the State Farm Mutual Automobile Insurance Company.

**15. Terms of Policy Conformed to Statute**

Liability Coverage for *bodily injury* and damage to property provided by this policy is done so in accordance with the coverage defined in the Alabama Motor Vehicle Safety Responsibility Act and is subject to all of its provisions.

**16. Severability**

If any provision of this policy is held invalid or unenforceable by a court that has jurisdiction, then:

a. such provision will remain in full force to the extent not held invalid or unenforceable; and

b. all other provisions of this policy will remain valid and enforceable.

Policy Form 9801A